UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| NORTHERN TRUCK EQUIPMENT CO., <br><br> Plaintiff, <br><br> vs. <br><br> OMAHA STANDARD, LLC, <br> a/k/a OMAHA STANDARD PALFINGER, <br> a/k/a EAGLE LIFT PALFINGER, <br><br> Defendant. | 5:13-CV-04088-KES <br><br><br><br> MEMORANDUM OPINION <br> AND ORDER |

Plaintiff, Northern Truck Equipment Co., brings this action against defendant, Omaha Standard, LLC, seeking damages from the following claims: unfair cancellation, breach of contract, and unjust enrichment. Northern Truck seeks compensatory and punitive damages from these claims. Omaha Standard now moves for summary judgment on all causes of action. Docket 18. Alternatively, Omaha Standard moves the court for an order limiting the potential damages available to Northern Truck. *Id.* Northern Truck resists Omaha Standard's motion and moves for summary judgment on the unfair cancellation claim. Docket 22. Additionally, Northern Truck moves the court to preclude the introduction of evidence related to revenue it obtains from the sale of Knapheide products. Docket 23.  For the following reasons, the court denies Omaha Standard's motion for summary judgment and its motion to limit damages. The court also denies Northern Truck's motion for summary

judgment and its motion to exclude evidence related to revenue obtained from the sale of Knapheide products.

## BACKGROUND

Northern Truck[1] is a full-line truck equipment distributor. Omaha Standard is a truck body and truck equipment manufacturer.  In the late 1980's, Northern Truck and Omaha Standard agreed that Northern Truck would distribute and sell Omaha Standard's truck body and equipment products in South Dakota.

Written correspondence between the two companies outlines the nature of the agreement.  In the first letter, dated March 23, 1990, Dean Wegner, of Omaha Standard, welcomed Dean Wartenbee, President of Northern Truck, as a new Omaha Standard distributor and delineated his understanding of the agreement.  The letter included the following terms:

1. I will cancel Tomark Equipment, Sioux Falls; Safety Service, Aberdeen; and Hills Brake, Rapid City as Omaha Standard distributors.
2. Safety Service, Aberdeen, would be able to buy Omaha Standard products from you at a low mark-up to accommodate his personal customers.
3. You have committed to selling Omaha Standard Eagle dump bodies instead of Heil dump bodies, in the 2-3 yard and 3-4 yard sizes.
4. You have committed to selling all Omaha Standard hoists instead of Heil, Harsh or any other brand of hoists.
5. You have committed to selling Omaha service bodies instead of Knapheide service bodies, phasing out of Knapheide as our product line expands.
6. You will still manufacture platforms, wood sides, and steel

_____

[1] Northern Truck Equipment Co. formerly operated under the name Schwaiger's Inc. during the course of the business relationship at issue.  For purposes of clarity, the court will refer to the company as Northern Truck regardless of the time period.

> sides, but will also sell Omaha Standard platforms with steel
> sides and stakeless steel sides.
>
> 7. You will promote, quote and try to sell Eagle Lift liftgates
> instead of Tommy Gate.

Docket 21-3, at 1. Wartenbee responded to this letter on March 26, 1990, and

confirmed the content of the agreement with the following minor changes:

> 1. No problems
> 2. No problems
> 3. The determining factors between the Omaha Standard Eagle
> dump and the Heil dump, in the 2-3 yard and 3-4 yard sizes
> will be the price, availability, customer preference and freight[.]
> 4. Only hoist would be 2TM53102 Twin Heil, otherwise you are
> correct. (Only on customer preference).
> 5. Knapheide called today – they are looking for another
> distributor.
> 6. No problem
> 7. I will call Tommy Gate and notify them[.]

Docket 21-4, at 2.

On March 5, 2001, Tim Craft, Vice President of Sales for Omaha

Standard, sent another letter to Wartenbee that greeted Northern Truck as a

"new Omaha Standard distributor." Docket 21-5, at 2. According to Craft's

letter, it was Omaha Standard's "understanding that Northern Truck

Equipment will represent, actively promote and sell Omaha Standard products.

The inclusion and continuation of these product lines requires a sales and

marketing program and inventory levels to adequately service your market." *Id.*

at 2. Additionally, the letter provided the following disclaimer:

> While this letter sets forth the general provisions of our
> relationship, it, or any other agreement or understanding, does not
> create a franchise or dealer arrangement, but only sets forth the
> terms on which you will be able to purchase Omaha Standard
> product at prevailing distributor prices; and Omaha Standard
> reserves the right to terminate our arrangement at any time
> without prior notice. Upon termination, the Omaha Standard

3

> Terms and Conditions of Sale shall continue to apply to all sales on
> orders accepted by Omaha Standard prior to termination.

*Id.* at 3. Wartenbee signed and returned the letter to Omaha Standard to
signify that he agreed with the conditions set forth in the letter. *Id.*

From 2001 to 2012, Northern Truck sold Omaha Standard products
without any material conflict between the two companies.  In 2012, however,
Omaha Standard formed an agreement with North American Truck and Trailer
that authorized North American Truck to distribute Omaha Standard
equipment and products in Sioux Falls, South Dakota.  Both Northern Truck
and North American Truck sold Omaha Standard products in the Sioux Falls
market in 2012.

On February 2, 2013, Northern Truck formed an agreement with
Knapheide to distribute Knapheide products in the Sioux Falls market.
Knapheide competes with Omaha Standard in the truck body and equipment
business. After learning about Northern Truck's agreement with Knapheide,
Omaha Standard sent a letter to notify Northern Truck that it was terminating
its relationship with Northern Truck. Docket 25-12. In part, the letter stated,
"This letter is formal notification of the cancellation of the Northern Truck
Equipment located in Sioux Falls, Rapid City, Watertown South Dakota and
Fargo North Dakota as an authorized Omaha Standard-Palfinger distributor."
*Id.* Additionally, the letter states that "Omaha Standard Palfinger based this
decision off the lack of purchases and market penetration by these locations
and the reorganization by Omaha Standard-Palfinger." *Id.*

Northern Truck filed its complaint against Omaha Standard in the

Second Judicial Circuit, Minnehaha County, South Dakota, on July 23, 2013.

Omaha Standard filed a notice of removal to federal court under

28 U.S.C. § 1446(a) on August 26, 2013. Docket 1.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953,

5

957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I.    Is summary judgment appropriate regarding the unfair cancellation claim.

Northern Truck's first cause of action against Omaha Standard relies on SDCL 37-5-4. This statute provides a civil remedy for any dealer damaged by the conduct of a person or entity acting in violation of SDCL 37-5-3. South Dakota Codified Law 37-5-3 establishes that it "is a Class 1 misdemeanor for any manufacturer, factory, branch, [or] distributor . . . unfairly, without due regard to the equities of the dealer and without just provocation, to cancel the franchise of any dealer." To establish just provocation, the manufacturer must cite "some sort of misconduct or shortcoming on the part of the dealer." *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.,* 418 F.3d 820, 832 (8th Cir. 2005) (quoting *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 168 (S.D. 1987)). "[T]he question whether a termination is done unfairly and without just provocation is ordinarily a question of fact[.]" *Id.*

Omaha Standard argues that the court can find just provocation through two separate avenues.  First, Omaha Standard asserts generally that over the last eight to ten years, it was consistently disappointed with Northern Truck's sales revenue and sales efforts. Its disappointment stemmed from Northern

6

Truck's supposed refusal to dedicate an outside sales representative to Omaha Standard products.  According to Omaha Standard, the alleged low sales figures would never improve without the outside sales efforts. Second, Omaha Standard argues that Northern Truck's decision to become a Knapheide distributor was just provocation. With sales efforts divided between Knapheide and Omaha Standard products, Omaha Standard asserts that Northern Truck would not be undertaking the sales efforts necessary to further penetrate the marketplace and to improve profitability.

Northern Truck argues that Omaha Standard's complaints about sales figures are unreasonable and were never formally communicated to Northern Truck.  Northern Truck relies on deposition testimony from Bill Coyne, regional sales representative for Omaha Standard, which states that Omaha Standard never communicated any concrete sales projections or expectations for Northern Truck. Northern Truck also argues that its actual sales production ranked in the top ten percent of all Omaha Standard distributors in this region.

Northern Truck also argues that its relationship with Knapheide does not provide just provocation for Omaha Standard to terminate the agreement. Northern Truck asserts that it has consistently represented and sold other manufacturer's products throughout the life of the relationship with Omaha Standard. Further, Northern Truck emphasizes that Omaha Standard currently allows North American Truck to carry products from Omaha Standard's competitors, including Knapheide.

The Eighth Circuit Court of Appeals stated in *Diesel Machinery* that the determination of whether there is just provocation to terminate a distributor agreement generally presents a question of fact. *Diesel Mach., Inc.*, 418 F.3d at 832. The same rationale applies here. Each company relies upon deposition-testimony excerpts to support its argument.  Because there are material questions of fact implicated in the determination of whether Omaha Standard responded to just provocation, this issue should be presented to a jury.  As such, both Omaha Standard and Northern Truck's motions for summary judgment pertaining to the unfair cancellation claim are denied.

**II.    Omaha Standard's remaining motion for summary judgment.**

**A.    The breach of contract claim.**

To succeed on a claim for breach of contract, a plaintiff must establish the following: (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages. *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (S.D. 2005). The existence of a valid contract is a question of law. *Werner v. Norwest Bank South Dakota, N.A.*, 499 N.W.2d 138, 141 (S.D. 1993). Because Northern Truck distributed Omaha Standard products for over twenty years and there are at least two letters articulating the exchange of a discounted pricing scheme for the distribution of truck equipment products, the court finds that an enforceable promise existed between the companies.

"It is equally well-settled that whether the parties' conduct constitutes a breach 'presents a pure question of fact that the trier of fact alone may decide.' " *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D. 1994). As the

moving party, Omaha Standard bears the burden of identifying the portion of the record that shows there is no genuine factual issue in dispute. *Hartnagel*, 953 F.2d at 395.

In the one paragraph of its brief that addresses the breach of contract claim, Omaha Standard argues that Northern Truck is unable to demonstrate or prove that the contract required just provocation prior to termination. Additionally, Omaha Standard asserts that even if the contract did require just provocation, its action was warranted based on the same grounds that it argues are relevant in the unfair cancellation analysis.

Northern Truck responds by stating that "at a minimum, there are disputed facts the jury needs to resolve." Docket 36-2, at 8. It relies on a portion of Wartenbee's deposition that describes how the parties had an agreement where Omaha Standard would supply the products that Northern Truck could promote and sell in the market. According to Northern Truck, terminating the distributorship without fair warning or just provocation breached this oral agreement.

Due to the different terms that Omaha Standard and Northern Truck allege are included in the oral agreement, there are questions of fact regarding the full scope of the agreement and whether the conduct at issue constitutes a breach. As the moving party, Omaha Standard has not met its burden of citing sufficient evidence that enables the court to hold that it did not breach the contract by terminating Northern Truck's distributorship.  Therefore, as it

pertains to the breach of contract claim, Omaha Standard's motion for summary judgment is denied.

**B.     The unjust enrichment claim.**

 "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.' " *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003). To prevail on the claim of unjust enrichment, Northern Truck must show that (1) Omaha Standard received a benefit; (2) Omaha Standard was aware that it received a benefit; and (3) it is inequitable for Omaha Standard to retain the benefit without paying for it. *Id.*

A claim for unjust enrichment seeks equitable relief. *Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010). "An essential element to equitable relief is the lack of an adequate remedy at law." *Rindal v. Sohler*, 658 N.W.2d 769, 772 (S.D. 2003). "[U]njust enrichment is unwarranted when the rights of the parties are controlled by an express contract." *Johnson*, 779 N.W.2d at 416 (citing *Burch v. Bricker*, 724 N.W.2d 604, 609-10 (S.D. 2006)). But "unjust enrichment can apply in a contract context when the performance received was not specified by the contract." *Id.* (citing Restatement (Third) Restitution § 2).

Omaha Standard argues that summary judgment is appropriate because Northern Truck has an adequate remedy at law. In its brief, Omaha Standard states "since the claim for unjust enrichment arises out of the same facts as the claim for the alleged violation of SDCL § [sic] 37-5-3, plaintiff has an adequate remedy of law if there was a wrongful termination." Docket 20, at 14.

As described in *Johnson*, a court can reserve its ruling on equitable claims until after a jury renders a verdict on the potential remedies at law. *Johnson*, 779 N.W.2d at 415. Here, without a full understanding of the terms of the oral agreement, there are questions of fact regarding any benefits conferred to Omaha Standard that potentially extend beyond the scope of the agreement. Accordingly, it is premature to rule on the equitable claim until after a jury renders judgment on the breach of contract and unfair cancellation claims.

## C.   Can Northern Truck present evidence related to punitive damages.

South Dakota law allows plaintiffs to recover punitive damages "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed[.]" SDCL 21-3-2. "Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991).

Punitive damages "are not ordinarily recoverable in actions for breach of contract, because, as a general rule, damages for breach of contract are limited to the pecuniary loss sustained." *Hoffman v. Louis Dreyfus Corp.,* 435 N.W.2d 211, 214 (S.D. 1989).  Thus, the court grants Omaha Standard's motion for summary judgment relating to punitive damages stemming from the breach of contract claim.

As to the viability of punitive damages relating to the unfair cancellation claim, the court declines to rule at this time. As articulated in *Lillibridge v. Nautilus Ins. Co.*, No. CIV. 10-4105-KES, 2013 WL 870439 (D.S.D. Mar. 7,

2013), near the end of Northern Truck's case in chief, it can request a hearing outside the presence of the jury where the court will review the evidence to determine whether there is a reasonable basis "to believe that there has been willful, wanton, or malicious conduct by [Omaha Standard]." *Id.* at *7. If Northern Truck meets this evidentiary burden, the court will allow Northern Truck to present evidence relating to punitive damages.

### III.   Is Northern Truck's revenue from the sale of Knapheide products admissible evidence.

Both parties have filed a motion addressing the admissibility and impact of evidence associated with the sale of Knapheide products.  The issue is relevant to the determination of damages stemming from the breach of contract and unfair cancellation claims.  South Dakota Codified Law 21-2-1 establishes the general measure of damages:

> For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.

And, SDCL 21-1-5 establishes that "no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides[.]"

Northern Truck argues that the court should exclude any evidence of revenue it obtains from the sale of Knapheide products under Federal Rule of Evidence 403. Northern Truck asserts that the lost volume doctrine applies to the sale of Knapheide products because it intended to sell Knapheide products

in addition to Omaha Standard products. Northern Truck relies upon a district court opinion, *Ullman-Briggs, Inc. v. Salton, Inc.*, 754 F. Supp. 1003 (S.D.N.Y. 1991), to support its argument that the lost volume doctrine applies to its distributor agreement.

In *Ullman-Briggs*, the United States District Court for the Southern District of New York applied a two-part test for determining whether a distributing company is a lost volume seller. *Id.* at 1008. First, the plaintiff must establish that it had the subjective intent to add a product line to its sales inventory. *Id.* at 1008-09. Second, the plaintiff must demonstrate that it had the capacity to service the additional product line without incurring additional overhead expenditures. *Id.* at 1009. If the plaintiff can satisfy both elements, then the sales revenue from the additional product line does not reduce the overall recovery. *Id.*

Omaha Standard disputes the application of the lost volume doctrine and urges this court to hold that the proper measure of Northern Truck's potential damages is the difference between the historical revenue associated with Omaha Standard and current revenue from Knapheide products. Omaha Standard argues that Northern Truck's revenue stemming from the sale of Knapheide products replaces its prior revenue from Omaha Standard products because the two product lines stand in direct competition with each other. Due to this competition, Omaha Standard asserts that consumers will purchase either an Omaha Standard product or a Knapheide product, not both.  To hold

otherwise, according to Omaha Standard, would pave the way for Northern Truck to enjoy double recovery.

Even assuming that the lost volume doctrine applies to Northern Truck's distribution scheme, Northern Truck has not presented sufficient evidence to establish that it was capable of marketing both Knapheide and Omaha Standard products while maintaining its current overhead and current sales force. On the other hand, Omaha Standard has not presented sufficient evidence to establish that Knapheide's product line completely overlaps with the Omaha Standard product line. The record merely establishes that the two companies compete in the truck body and equipment business and generally have similar products. At trial, both parties can introduce evidence to support their respective positions and a jury can determine the appropriate damages. Thus, Omaha Standard's motion is denied. Northern Truck's motion is also denied.

## CONCLUSION

The record is replete with disputes of material fact surrounding the claims asserted by Northern Truck against Omaha Standard. It is

ORDERED that Omaha Standard's motion for summary judgment and to limit plaintiff's damages (Docket 18) is DENIED.

It is FURTHER ORDERED that Northern Truck's motion for partial summary judgment (Docket 22) is DENIED.

It is FURTHER ORDERED that Northern Truck's motion to exclude evidence of profits under Knapheide contract (Docket 23) is DENIED.

Dated November 16, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

15